IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ROGER SEAWRIGHT,** | * | |
| **Plaintiff** | * | |
| v. | * | **CIVIL NO. JKB-14-1326** |
| **M. SHANKEN COMMC'NS, INC.,** | * | |
| **Defendant** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM

Roger Seawright ("Plaintiff") brought this suit against M. Shanken Communications, Inc. ("Defendant") pursuant to the Lanham Act, 15 U.S.C. § 1052(e)(1), seeking a declaratory judgment that M. Shanken's trademark is invalid as a generic name. Mr. Seawright also alleges defamation of character, and seeks damages of $250,000. Now pending before the Court is Plaintiff's motion (ECF No. 9) for the Court to reconsider the order granting Defendant's motion to dismiss (ECF No. 8). The issues have been briefed (ECF Nos. 9, 11, 12), and no hearing is required, Local Rule 105.6. For the reasons set forth below, Plaintiff's motion to reconsider will be DENIED.

### I.   BACKGROUND[1]

Plaintiff is an Internet consultant who purchases what he describes as "generic term domain names." (ECF No. 1 at 4.) Plaintiff typically has no intent to use the domain name himself. (*Id.*) Instead, he advertises and attempts to sell these domain names to businesses. (*Id.*)

---

[1] The facts are recited here as alleged by the Plaintiff, this being a motion to reconsider an order granting a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

Defendant is a corporation that has published *Cigar Aficionado* magazine since 1992.  (ECF No. 4 at 6.)  Defendant owns four registered trademarks for the *Cigar Aficionado* brand, two registered in 1992 and two in 1997.  The trademark Registration Numbers are: 2025421, 3614669, 2131128, 2054780.  (*Id.* at 2-3.)  Defendant also operates www.cigaraficianado.com.  (ECF No. 1 at 4.)

Plaintiff purchased the domain name www.cigaraficiando.org on January 8, 2014.  (ECF No. 1 at 4.)  On January 9, Plaintiff advertised his intent to sell the domain name, noting that Defendant had failed to "do their due diligence" by not purchasing the .org domain name.  (*Id.* at 4-5; ECF No. 4 at 8.)  On February 27, Defendant sent a demand letter to Plaintiff, requesting that Plaintiff: (1) stop using the www.cigaraficianado.org domain name; (2) cancel his registration of the domain name; and (3) transfer any ownership of the domain name to Defendant.  (ECF No. 1 at 5.)

Defendant filed an arbitration complaint with the National Arbitration Forum on April 2, 2014, as required by the Uniform Domain-Name Dispute-Resolution Policy ("UDRP").[2]  (*Id.* at 6; ECF. No. 4 at 5.)  On April 14, the arbitrator ruled in favor of Defendant, and ordered that the www.cigaraficianado.org domain name be transferred to Defendant.  (ECF No. 1 at 6.)  Plaintiff then filed this complaint seeking a declaratory judgment that Defendant's mark is invalid, and seeking damages for defamation of character.  (*Id.* at 7.)

---

[2] To purchase the right to use a domain name, a buyer must contract with a domain name registrar that is accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN").  *Information for Registrars and Registrants*, ICANN, https://www.icann.org/resources/pages/registrars-0d-2012-02-25-en (last visited Aug. 22, 2014).  ICANN is a nonprofit corporation that keeps track of all registered domain names to ensure that each web address is unique.  *Welcome to ICANN!*, ICANN https://www.icann.org/resources/pages/welcome-2012-02-25-en (last visited Aug. 22, 2014).  To become ICANN-accredited, "[a]ll registrars must follow the [UDRP]," *Uniform Domain-Name Dispute-Resolution Policy*, ICANN, https://www.icann.org/resources/pages/udrp-2012-02-25-en (last visited Aug. 22, 2014), which requires that disputes about confusingly similar trademarks be submitted to an administrative proceeding conducted by an approved dispute resolution service.  ICANN, https://www.icann.org/resources/pages/policy-2012-02-25-en (last visited Aug. 22, 2014).  The National Arbitration Forum is one of these ICANN-approved dispute resolution services.  NATIONAL ARBITRATION FORUM, http://domains.adrforum.com/ (last visited Aug. 22, 2014).

On May 29, 2014, Defendant filed a Motion to Dismiss for Failure to State a Claim.  (ECF No. 4.)  The Court did not receive a timely Response from Plaintiff, and after carefully considering the issues presented, granted Defendant's motion to dismiss on July 3, 2014.  (ECF No. 8.)  In doing so, the Court adopted the reasons stated in Defendant's brief and directed the Clerk to close this case.  (*Id.*)

Plaintiff filed a Motion for Reconsideration of the Court's order on July 7, 2014.  (ECF No. 9.)  In a note attached to his motion (ECF No. 10), Plaintiff alleges that he submitted his Response to Defendant's Motion to Dismiss before the deadline.[3]  He has since filed a shipment receipt as evidence of his timely filing.  (*Id.*)

## II. LEGAL STANDARD

### A. Motion for Reconsideration

The power to reconsider an order is "committed to the discretion of the district court." *Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003).  In exercising this discretion, courts must be sensitive to "concerns of finality and judicial economy."  *Id.* However, "[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Id.*

### B. Motion to Dismiss

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To pass this test, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[3] The Court docket continues to reflect the absence of a timely filing by the Plaintiff.

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

A plaintiff filing *pro se* is held to a "less stringent standard" than is a lawyer, and the court must construe his claims liberally, no matter how "inartfully" pled. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even a *pro se* complaint must meet a minimum threshold of plausibility. *See, e.g.*, *O'Neil v. Ponzi,* 394 Fed. App'x. 795, 796 (2d Cir. 2010).

### III.  ANALYSIS

#### A.  Plaintiff's Cause of Action

As a threshold matter, Plaintiff brings this claim under the incorrect source of law. Plaintiff asks the Court to find the title of the Defendant's publication, *Cigar Aficionado*, to be an invalid trademark.[4] The Complaint states that the action is brought under the Lanham Act 15 U.S.C. § 1052(e)(1). (ECF No. 1 at 4.) Section 1052(e)(1) bars registration of a trademark that, "when used on or in connection with the goods of the applicant is merely descriptive or deceptively

---

[4] Plaintiff also owns a website with the domain name www.foodarts.org, and Defendant's filings suggest that this domain name may infringe upon a different registered trademark held by Defendant. (ECF No. 4 at 10.) Plaintiff similarly alleges that Food Arts is an invalid trademark, however, Plaintiff does not pray for relief on the issue of the Food Arts mark. (ECF No. 9 at 10.) Accordingly, as to foodarts.org, there is no claim before the Court, and this aspect of the matter will not be further addressed.

misdescriptive of them." 15 U.S.C. § 1052(e)(1). Were the Court to end its analysis here, Plaintiff's claim would be dismissed for failure to state a claim upon which relief can be granted. Section 1052 of the Lanham Act does not create a private right of action. Instead, it governs trademark validity assessments made by the United States Patent and Trademark Office ("USPTO"). *See Dep't of Parks and Recreation for State of California v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1133 (9th Cir. 2006).

Still, the Plaintiff being *pro se*, the Court liberally construes his pleadings. Based on a careful reading of Plaintiff's complaint and related filings, Plaintiff's claim is best construed as a cancellation proceeding under 15 U.S.C. § 1064. Section 1064 provides a vehicle for private litigants to petition for cancellation of registered marks. 15 U.S.C. § 1064. To succeed, Plaintiff must first prove that he has standing to sue, and second that cancellation may be granted upon valid grounds. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000). While claimants may bring cancellation proceedings before the Patent and Trademark Review Board, Congress expressly extended concurrent jurisdiction to federal district courts as well. 15 U.S.C. § 1119.

### B. Plaintiff's Standing to Sue

Plaintiff satisfies the standing requirement because he plausibly and credibly "believes that he is or will be damaged . . . by the registration of a mark." 15 U.S.C. § 1064. Plaintiff may satisfy the standing requirement "by establishing a direct commercial interest." *Cunningham*, 222 F.3d at 945. In this case, Plaintiff has been ordered to transfer his ownership of the contested domain name by the UDRP arbitrator. (ECF No. 4-3.) Additionally, Plaintiff's Complaint explains that his "reputation as a domainer and Internet Consultant will be irreparably

harmed if this domain is transferred to the defendant." (ECF No. 1 at 7.) These claims are sufficient to establish standing.

### C. Plaintiff's Cancellation Claims on the Merits

Plaintiff's complaint alleges that Defendant's marks should be declared invalid for being (1) merely descriptive, (2) misdescriptive, and (3) generic. While Plaintiff often uses these labels interchangeably, each provides different grounds for cancellation.

Allegations that Defendant's marks are "merely descriptive" or "deceptively misdescriptive" are time barred under the Lanham Act and thus fail. Section 1064 separates valid grounds for cancellation into those that can only be raised within five years of a mark's registration, and those that can be raised at any time. 15 U.S.C. § 1064. Trademarks that are merely descriptive or deceptively misdescriptive may be barred from registration by the USPTO, and may even be canceled by courts or the Trademark Trial and Appeal Board provided they are accused within five years of registration. *See* 15 U.S.C. § 1052(e)(1) (establishing grounds for the USPTO to deny registration); *Neapco Inc. v. Dana Corp.*, 12 U.S.P.Q.2d 1746, 1989 WL 274388, at *1 n.1 (T.T.A.B. 1989) ([A] petition to cancel a registered mark on the basis that it was merely descriptive and lacked secondary meaning must be filed within five years from the date of the registration of the mark."). Given time, though, a mark may become "incontestable," and thereafter the mark's descriptiveness can no longer be challenged. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 196 (1985) ("The language of the Lanham Act . . . refutes any conclusion that an incontestable mark may be challenged as merely descriptive."); *see also* 15 U.S.C. § 1065 (describing incontestability of marks); 15 U.S.C. § 1115 (describing evidentiary impact of incontestable marks).

By findings of the USPTO, three of Defendant's marks are incontestable: Registration Number 2025421 (ECF No. 4-5 at 1), Registration Number 2131128 (ECF No. 4-5 at 3), and Registration Number 2054780 (ECF No. 4-5 at 5). While these marks could have been challenged at one time, these three marks became incontestable long before this action was filed. (ECF No. 4-5.) Mere descriptiveness and/or deceptive misdescriptiveness no longer constitute valid grounds for cancellation of these three. (The fourth mark, Registration Number 3614669, survives this analysis, but nonetheless must be dismissed for failure to state a claim, as discussed *infra*.)

Plaintiff's claim that the challenged marks are generic warrants greater attention. "Genericness" is one of the limited grounds that may support a cancellation claim after a mark has otherwise become incontestable. 15 U.S.C. § 1064(3) (noting that a trademark may be challenged "[a]t any time if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered").

Generic names do not receive trademark protection because they conflict with the policy goals underlying trademark doctrine. Trademark protection is intended to serve consumers by "'distinguishing the applicant's goods from those of others' and identifying the source of the goods." *Retail Servs., Inc. v. Freebies Publ'g.*, 364 F.3d 535, 538 (4th Cir. 2004) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). A name that is generic *fails* to distinguish the applicant's goods from those of its competitors, and *fails* to identify the source of goods for consumers. *Id.* It merely "refers to the genus of which the particular product is a species." *Park 'N Fly*, 469 U.S. at 194. For example, the mark *Community First Bank* is a generic name for a community banking institution, and so it cannot receive trademark protection. *Cmty. First Bank v. Cmty. Banks*, 360 F. Supp. 2d 716, 724-25 (D. Md. 2005). Thus, generic

names receive no trademark protection, and genericness serves as a valid ground for cancellation at any time. *See* 15 U.S.C. § 1064(3); *Retail Servs.*, 364 F.3d at 538.

Plaintiff has failed to plead sufficient facts to state a claim for relief that is plausible on its face. The Court has construed Plaintiff's complaint and further filings liberally, due to his status as a *pro se* litigant. Still, Plaintiff's allegations, in the end, are conclusory and therefore insufficient. Plaintiff primarily argues that Defendant's marks are generic, and thus receive no trademark protection. But instead of pleading facts to give rise to a reasonable inference that Defendant's marks should be cancelled, Plaintiff simply and repeatedly offers conclusions that the challenged marks are generic. *See, e.g.*, (ECF No. 1 at 5-6 ("Cigar aficionado is a generic term . . . . Neither of these terms, cigar aficionado, separate or when combined cannot [sic] be trademarked and remain generic."); ECF No. 9 at 2 ("The word cigar aficionado is a generic term."); *Id.* at 3 ("[T]he word cigar aficionado is a generic term that most 7th grade English teachers would use to define a person that has a fondness for cigars.").) Plaintiff does not even raise the allegation that Defendant's mark is descriptive until his Motion to Reconsider. (ECF No. 9 at 2.) Even then, Plaintiff's claims are plain legal conclusions, unsupported by facts. *See, e.g.*, *id.* at 2 ("To tell the public that the meaning of the word cigar aficionado is an American magazine that is dedicated to the world of cigars is deceptively misdescriptive . . . because most would understand the word cigar aficionado to mean something similar to a cigar enthusiast."); *id.* at 6 (stating that the name *Cigar Aficionado* is "merely descriptive and based on [Defendant's] use of the word is deceptively misdescriptive").

While a well-supported claim of genericness, mere descriptiveness, or deceptive misdescriptiveness of a name ordinarily will pass the plausibility test and thus will survive a motion to dismiss, here Plaintiff has failed to satisfy the minimum pleading requirements set

forth in *Twombly* and *Iqbal*.  Aside from mere naked legal conclusions, Plaintiff has not alleged any facts suggesting that *Cigar Aficionado* is an invalid trademark.  Thus, Plaintiff's Motion to Reconsider the Court's order dismissing the complaint is DENIED.

### D.  Plaintiff's Allegations of Defamation

Plaintiff also seemingly brings a claim for defamation of character against Defendant, alleging that "the Defendant's complaints and actions have falsely labeled the Plaintiff as a cybersquatter and have damaged his reputation and caused impact to his business."  (ECF No. 1 at 7.)   Plaintiff seeks $250,000 in damages.

Neither Plaintiff nor Defendant has fully briefed this issue.  Plaintiff has not cited a cause of action through which he seeks relief, and he has not explained why the Court holds Supplemental Jurisdiction over this state law tort claim.  Defendant has not addressed this claim in any of its filings.

In referring to "complaints and actions," the best interpretation is that Plaintiff is referring to statements made by Defendant in this and related proceedings.  Briefs aside, Plaintiff's claim must be dismissed because, in Maryland, "'witnesses, parties, and judges' enjoy 'absolute immunity from civil liability,' for statements made in a judicial proceeding, 'even if the statement is wholly unrelated to the underlying proceeding.'"  *Long v. Welch & Rushe, Inc.*, 2014 WL 2963975 at *8 (D. Md. 2014) (quoting *Norman v. Borison*, 418 Md. 630 (2011)).  Further, this absolute privilege extends to three forms of extrinsic statements: "(1) statements made with the direct purpose or effect of producing a judicial or quasi-judicial proceeding; (2) statements 'prepared for possible use in connection with a pending judicial proceeding, but which remain unfiled at the time of the alleged injury'; and (3) statements that are not designed necessarily to produce a proceeding or cause one to be 'filed,' but which are connected

contextually to a pending or ongoing proceeding." *Id.* at *9 (quoting *Norman v. Borison*, 418 Md. 630, 653 (2011)). Plaintiff's complaint refers only to Defendant's accusations of "cybersquatting" that, inferentially, must have taken place during the course of the UDRP arbitration and these judicial proceedings. (ECF No. 1 at 7.) Certainly no other context is alleged.

Thus, Defendant enjoys an absolute privilege, and Plaintiff's defamation claim must be dismissed.

## IV. CONCLUSION

Accordingly, an order shall issue DENYING Plaintiff's motion for reconsideration. (ECF No. 9.)

Dated this 26th day of August, 2014.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge
